# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 00-1409

_____

Black Clawson Company, Inc.,   *
  *
    Appellant,   *
  *   Appeal from the United States
  v.   *   District Court for the Northern
  *   District of Iowa.
Kroenert Corporation, Klaus Dieter   *
Reinhardt, and Maschinenfabrik Max   *
Kroenert GmbH and Co.   *
  *
    Appellees.   *

_____

Submitted: November 15, 2000

Filed: March 28, 2001

_____

Before WOLLMAN, Chief Judge, McMILLIAN, and BYE, Circuit Judges.

_____

WOLLMAN, Chief Judge.

   Black Clawson Company appeals the district court's grant of summary judgment in favor of the defendants. We reverse and remand.

# I.

Black Clawson Company, Inc., an Ohio corporation with its principal place of business in New York, is a licensee of certain intellectual property owned by a German corporation, Pagendarm Technologie GmbH. Black Clawson manufactures coating, drying, and moisturizing equipment for paper, film, and textiles. The license agreement was entered into on May 14, 1996, and grants Black Clawson the exclusive rights to use the proprietary information in its manufacturing business in North America.

Maschinenfabrik Max Kroenert GmbH & Co. (MMK), a German corporation with its principal place of business in Germany, is in the same business as Black Clawson. Kroenert Corporation, a Delaware corporation with its principal place of business in Iowa, is a wholly owned subsidiary of MMK that solicits orders in the United States for products to be manufactured by MMK. Klaus Dieter Reinhardt is a director of Kroenert and MMK, and is a citizen and resident of Germany.

Certain former employees of Pagendarm allegedly stole the licensed technology from Pagendarm in Germany in late 1995 and created Kroenert and MMK to market in the United States products manufactured with the technology, directly interfering with Black Clawson's property rights in the technology. The theft was known to Pagendarm and Black Clawson when they entered into the license agreement. The license agreement transfers the exclusive right within the United States to use the licensed technology, including any and all inventions covered by the agreement, and to manufacture, use, sell, or lease any and all products covered by the agreement. The only rights withheld from Black Clawson are the rights to disclose proprietary information to third parties and to sub-license to third parties without Pagendarm's consent. The agreement contains a choice of law provision stating that it would be interpreted, and any disputes arising out of it would be resolved, according to New York law. It further provided that neither party can obligate or bind the other to third parties in any way.

In 1997, Black Clawson filed the present case against the defendants in federal district court in Iowa, alleging that Reinhardt, along with others, created the defendant corporations for the purpose of unfairly competing with Black Clawson in the United States and seeking damages and injunctive relief under the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961-1968, the Lanham Act, 15 U.S.C. § 1051 et seq., the Paris Convention for the Protection of Industrial Property (through 15 U.S.C. §§ 1126(b) and 1126(i) (1994)), and Iowa law. The state law causes of action include conversion, misappropriation of trade secrets, conspiracy, unjust enrichment, tortious interference with existing contractual rights, and unfair competition.

Also in 1997, a German corporation with a similar exclusive license from Pagendarm covering Europe, Pagendarm BTT, GmbH (BTT), filed suit in a German court against MMK and its German subsidiary (the German defendants) for the misappropriation and improper use in Europe of the technology. Pagendarm intervened in the German lawsuit so that all causes of action arising out of conduct occurring in Germany could be resolved together. On July 28, 1998, Pagendarm and BTT entered into a settlement agreement with the German defendants resolving and dismissing the German litigation with prejudice. As a part of that settlement, Pagendarm waived all claims against the German defendants to which it was or would become entitled concerning the technology at issue here. The settlement recited that it applied for the benefit of all shareholders, directors, employees, and affiliates of the German defendants. The German defendants attempted to induce Black Clawson to dismiss the American litigation and to intervene in the German lawsuit for the purposes of resolving and disposing of all claims against all of the defendants relating to the misappropriation and improper use of the technology through the German settlement and release. Black Clawson refused to dismiss its lawsuit in the United States and did not participate in the German litigation.

The relevant clause of the settlement agreement states: "Plaintiff waives, also for the past and future, all claims against Defendants to which it is or will be entitled concerning the [technology licensed to Black Clawson] . . . and rights pertaining thereto, and particularly [the specific conduct upon which Pagendarm and its European licensee brought suit]." The district court interpreted this language to release the defendants from liability to Black Clawson, concluding that Pagendarm could have asserted any claim held by Black Clawson. The court also found that Pagendarm's settlement unambiguously released the defendants from any further liability to Pagendarm or any other party related to or arising out of the defendants' acquisition and use of the technology anywhere in the world. Comparing the present controversy to a dispute between a licensee of a patent and a third party infringer, see 35 U.S.C. §§ 271, 281 (1994 & Supp. IV 1998); Biosyntec, Inc. v. Baxter Healthcare Corp., 746 F. Supp. 5, 9-10 (D. Or. 1990), the court concluded that no disputed issue of material fact existed, that the settlement agreement precludes the current claims brought by Black Clawson, and that the defendants were entitled to summary judgment.

## II.

We review the grant of summary judgment de novo. Williams v. Kelso, 201 F.3d 1060, 1064 (8th Cir. 2000). We examine the facts in the light most favorable to the party opposing summary judgment, affirming if no material fact is in dispute and no question of law contradicts the moving party's right to judgment as a matter of law. Id. A finding of claim preclusion is reviewed de novo. Lundquist v. Rice Mem'l Hosp., 238 F.3d 975, 976 (8th Cir. 2001). The district court's interpretation and conclusions of law are reviewed de novo. David v. Tanksley, 218 F.3d 928, 930 (8th Cir. 2000); Graham v. Dormire, 212 F.3d 437, 439 (8th Cir. 2000).

The district court granted summary judgment based on the principle of res judicata, or claim preclusion. Preclusion doctrines are employed to conserve judicial resources and protect parties from "the expense and vexation" of relitigating claims and

issues that have been previously adjudicated. Tyus v. Schoemehl, 93 F.3d 449, 453-54 (8th Cir. 1996). A final judgment will bar any subsequent suit if: "(1) the first suit resulted in a final judgment on the merits; (2) the first suit was based on proper jurisdiction; (3) both suits involve the same parties (or those in privity with them); and (4) both suits are based upon the same claims or causes of action." Costner v. URS Consultants, Inc., 153 F.3d 667, 673 (8th Cir. 1998).

Foreign adjudication of an issue may preclude its relitigation in our courts. A foreign judgment is recognized, enforced, and given preclusive effect by a court of this country if the court finds five factors to be present. Shen v. Leo A. Daly Co., 222 F.3d 472, 476 (8th Cir. 2000) (citing Hilton v. Guyot, 159 U.S. 113 (1895)). Previously litigated claims should not be retried if the reviewing court finds that the foreign court provided a full and fair trial of the issues in a court of competent jurisdiction, the foreign forum ensured the impartial administration of justice, the foreign forum ensured that the trial was conducted without prejudice or fraud, the foreign court had proper jurisdiction over the parties, and the foreign judgment does not violate public policy. Shen, 222 F.3d at 476 (citing Hilton, 159 U.S. at 202-03).

The parties do not dispute that the German court properly adjudicated the claim that was before it. The factors set out in Shen are satisfied, and the claims resolved in the German case will preclude Black Clawson's suit if the general rules as set out in Costner are satisfied. The only issue in dispute is the scope of the judgment in the German case, i.e., whether it extinguished claims based upon defendants' conduct in the United States and whether Pagendarm represented or was in privity with Black Clawson such that Black Clawson should be bound by that case.

Because the German court entered judgment accepting the settlement agreement and dismissing the case with prejudice, the settlement agreement has the effect of a final judgment on the merits of the case. Larken, Inc. v. Wray, 189 F.3d 729, 732 (8th Cir. 1999). The parties do not dispute that the German court had jurisdiction over the

-5-

parties to the German lawsuit, but Black Clawson argues that the German court did not have jurisdiction over it or its claims based on conduct in the United States. Whether jurisdiction was proper depends on whether the third requirement is met, i.e., whether Black Clawson was in privity with Pagendarm. The defendants argue that Black Clawson was virtually represented in the German litigation by its licensor, Pagendarm, and that Black Clawson has no rights to the technology independent of Pagendarm's rights. If the defendants are correct, then the fourth factor, that both suits are based on the same claims or causes of action, is met because Pagendarm explicitly released all claims and causes of action.

Whether a party adequately represents a non-party such that the party can be considered the virtual representative of the other is a fact-intensive inquiry based on several factors. Tyus, 93 F.3d at 455. These include identity of interests between the parties, how closely they are related, whether the party to the present suit participated in or deliberately maneuvered to avoid the effects of the first action, and whether the party to the first action had incentive to protect the interests of the second party. Id. at 455-56. "[T]he party against whom res judicata is asserted must have had a full and fair opportunity to litigate the matter in the proceeding that is to be given preclusive effect." Costner, 153 F.3d at 673 (quoting In re Anderberg-Lund Printing Co., 109 F.3d 1343, 1346 (8th Cir. 1997)). The party is not, however, required to intervene voluntarily in a separate pending suit merely because it is permissible to do so. Chase Nat'l Bank v. City of Norwalk, 291 U.S. 431, 441 (1934).

Although Black Clawson and Pagendarm have a close business relationship with respect to this technology, their interests with respect to its use in the United States are not identical. The license agreement transfers the exclusive right within the United States to use the licensed technology, including the right to practice any and all inventions covered by the agreement and to manufacture, use, sell, or lease any and all products covered by the agreement. The only rights specifically withheld from Black Clawson are the rights to disclose the proprietary information to third parties and to

sub-license to third parties without Pagendarm's consent. Black Clawson possessed all substantial rights to the technology, including the right to bring suit for interference with the technology and Black Clawson's rights to it. See Agrashell, Inc. v. Hammons Prods. Co., 352 F.2d 443, 446 (8th Cir. 1965). Pagendarm no longer possessed any substantial rights to the technology in the United States and so did not have a claim for the defendants' unauthorized use of it in the United States or for the defendants' unfair competition with Black Clawson.

Because Pagendarm has assigned its rights by contract, the only party who would be harmed by the defendants' improper importation and use of the technology in the United States is Black Clawson. Pagendarm has already received value for the use of the technology in the United States, and will remain in precisely the same position whether Black Clawson alone uses the technology in this country or MMK competes with it. Thus, Pagendarm's and Black Clawson's interests are divergent, and Pagendarm had little practical incentive to assert Black Clawson's rights in the German litigation. Accordingly, we conclude that Black Clawson was not in privity with Pagendarm and that Pagendarm did not provide Black Clawson with virtual representation in the German litigation. The settlement in Germany therefore has no res judicata effect in the present action.

In ruling that Pagendarm's release discharged Black Clawson's claims as licensee, the district court relied on the proposition that a release by a patentee for infringement by a stranger precludes any subsequent action by a licensee arising out of the infringement. See Biosyntec, 746 F. Supp. at 9-10. It is well settled that a bare licensee of a patent may not sue for infringement in its own name, but must at least join the patentee. 35 U.S.C. § 281 (1994); Independent Wireless Tel. Co. v. Radio Corp. of America, 269 U.S. 459, 468 (1926); Agrashell, 352 F.2d at 446; see also Prima Tek II, L.L.C. v. A-Roo Co., 222 F.3d 1372, 1377 (Fed. Cir. 2000). The policy goal underlying this rule corresponds to that supporting the doctrine of res judicata: preventing duplicative litigation against a single infringer for a single act of

infringement. Prima Tek II, 222 F.3d at 1381. That goal is not implicated here, however, because the acts complained of by Black Clawson are different from those upon which the German litigation was founded.

Even if Black Clawson's rights in the technology were treated as analogous to a patent, Black Clawson's claims would still not be not precluded by Pagendarm's release in Germany. Title to a patent is assignable, and an assignee holds the same rights that the original patentee had. See Prima Tek II, 222 F.3d at 1377 (explaining effect of transfer of patent); Abkco Music, Inc. v. Harrisongs Music, Ltd., 944 F.2d 971, 980 (2nd Cir. 1991) (assignee of a copyright may sue for infringement occurring during the period of the assignment). The line distinguishing a license from an assignment is not always clear. Whether a transfer is a bare license or a constructive assignment depends on the legal effect of the transfer rather than the form it takes. Waterman v. McKenzie, 138 U.S. 252, 256 (1891). In making this determination, the court must look at the language of the agreement and ascertain whether the parties intended a grant of all substantial rights. Finance Inv. Co. (Bermuda) v. Geberit AG, 165 F.3d 526, 532 (7th Cir. 1998); Textile Productions, Inc. v. Mead Corp., 134 F.3d 1481, 1484 (Fed. Cir. 1998); Agrashell, 352 F.2d at 446. An exclusive licensee for all or any specified portion of the United States is an assignee as to the specified territory and may sue in its own name for infringement of its rights, even as against the licensor. Waterman v. McKenzie, 138 U.S. 252, 256 (1891); Prima Tek II, 222 F.3d at 1377 ("an exclusive, territorial license is equivalent to an assignment and may therefore confer standing upon the licensee to sue for patent infringement").

Pagendarm granted to Black Clawson all substantial rights to the technology for the entire country. The acts committed by the defendants occurred in the United States during the effective period of the license and caused injury to Black Clawson. Therefore, as an assignee of the licensed technology, Black Clawson would have standing to bring its own claims against the defendants independent of Pagendarm.

Thus, Pagendarm could not have released the defendants from claims or causes of action to which it was not entitled.

The summary judgment is reversed, and the case is remanded for further proceedings not inconsistent with this opinion.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.