Joyce LOUDNER, Ambrose McBride, Chauncey Long Crow, Della Lytle, Hilda Long Crow, Lisa Redwing, Horace Gilbert Slow, Darlene Fallis Jones, Lyle Medicine Crow, Ramona Estes, Fay Jandreau, Norman V. Taylor, and Kathryn Ratliff, Plaintiffs,

v.

UNITED STATES of America, and Gale Norton, individually and in her capacity as Secretary of the Interior, Defendants.

No. CIV 94–4294.

United States District Court,
D. South Dakota,
Southern Division.

Feb. 25, 2004.

Michael Charles Abourezk, Abourezk Law Offices, Rapid City, SD, Charles Rick Johnson, Stephanie E. Pochop, Johnson, Eklund, Nicholson & Peterson, Gregory, SD, for Plaintiffs.

Jan L. Holmgren, Assistant United States Attorney, U.S. Attorney's Office, Sioux Falls, SD, for Defendants.

## MEMORANDUM OPINION AND ORDER

PIERSOL, Chief Judge.

Defendants filed a Motion to Dismiss, Doc. 253, seeking an Order dismissing the Plaintiffs' claims challenging the constitutionality and legality of the Mississippi Sioux Tribes Judgment Fund Distribution Act of 1998 ("the 1998 Act"). Pub.L.No. 105–387, 112 Stat. 3471 (codified at 25 U.S.C. § 1300d–21 et seq.) (2001). In addition, a Motion to Intervene as Defendant, Doc. 256, and a Motion to Dismiss, Doc. 259, were filed by the Sisseton–Wahpeton Sioux Tribe of the Lake Traverse Indian Reservation, North Dakota and South Dakota; the Spirit Lake Tribe of the Ft. Totten Indian Reservation; and the Assiniboine & Sioux Tribes of the Ft. Peck Indian Reservation, Montana ("the Tribes"). These motions have been fully briefed and will be decided based upon the written record in this action.

## BACKGROUND

This action has been pending since 1994. The history of this action, and the related lawsuit *LeBeau v. United States*, 171 F.Supp.2d 1009 (D.S.D.2001), has been set forth in several prior opinions by both this Court and the Eighth Circuit Court of Appeals. *See Loudner v. United States*, 108 F.3d 896 (8th Cir.1997); *Loudner v. United States*, 905 F.Supp. 747 (D.S.D. 1995) (*rev'd*, 108 F.3d 896 (8th Cir.1997)); *LeBeau v. United States*, 215 F.Supp.2d 1046 (D.S.D.2002); *LeBeau v. United States*, 171 F.Supp.2d 1009 (D.S.D.2001); *Lebeau v. United States*, 115 F.Supp.2d 1172 (D.S.D.2000).

After the Eighth Circuit remanded this action in 1997, the Court has been monitoring the Secretary of the Interior's ("Secretary") efforts to finalize the preparation of the roll of lineal descendants and distribute the Judgment Fund at issue in this lawsuit and in *LeBeau*. After the remand, four amended complaints were filed. The first amended complaint following the remand was filed on December 19, 1997 (Doc. 59.) This complaint contained allegations similar to the original complaint relating to the failure of the Secretary to notify Plaintiffs of the Judgment Fund, but it also contained a claim that proposed legislation that would give the interest on the Judgment Fund to the Tribes, rather than to the individual lineal

descendants, would be a taking in violation of the Fifth Amendment. They also alleged that the proposed legislation would violate the trust relationship between the lineal descendants and the United States. The December 19, 1997 amended complaint was re-filed with the Court on October 13, 1998, which was approximately one month before the 1998 Act was enacted.

Plaintiffs again moved to amend their complaint on March 24, 2000. The Third Amended Complaint incorporated the claims alleged by the Plaintiffs in the *LeBeau* action, which included the claim that the 1998 Act was a taking that had been asserted by Plaintiffs as early as December 19, 1997. In addition to incorporating the claims from the *LeBeau* action, the March 24, 2000 amendment sought to add a claim that the 1998 Act's requirement of tracing ancestry further back in time than was required of the lineal descendants who were found eligible in 1972 violates Plaintiffs' right to equal protection of the laws. They also alleged that the tracing requirement violated the trust relationship between Plaintiffs and the United States. The March 24, 2000 motion to amend was the first time Plaintiffs raised an equal protection claim challenging the 1998 Act. The motion to amend was granted and the Third Amended Complaint was filed on December 15, 2000. A Fourth Amended Complaint was filed on July 27, 2001, with the Court's permission.

At the time the Third Amended Complaint was filed, incorporating the *LeBeau* claims, the complaint in the *LeBeau* action alleged that the United States breached its duty of trust to the plaintiffs by delaying the distribution of the Judgment Fund and that the 1998 Act was an unconstitutional taking, in violation of the Fifth Amendment, of the plaintiffs' vested interest in the Judgment Fund. (*LeBeau,* CIV 99–4106, Complaint, Doc. 1.) On December 15, 2000, the plaintiffs in *LeBeau* filed a motion to amend the complaint, which was granted on September 25, 2001. The *LeBeau* Amended Complaint, Doc. 97, was filed on November 30, 2001. The original complaint was incorporated in the Amended Complaint, and a new paragraph was added to allege that the 1972 Act [1] created a trust relationship between the United States and the plaintiffs, that the United States breached that trust and the plaintiffs were entitled to damages pursuant to the "Little" Tucker Act, 28 U.S.C. § 1346(a)(2) (1993). (*LeBeau,* CIV 99–4106, Amended Complaint, Doc. 97.)

In the dismissal motion, the Defendants contend that the one-year statute of limitations in the 1998 Act bars these Plaintiffs' constitutional challenges to the 1998 Act. *See* 25 U.S.C. § 1300d–27(d) (2001). Defendants argue the one-year statute of limitations expired on November 13, 1999 and Plaintiffs did not seek to challenge the 1998 Act on equal protection grounds until they filed their motion to amend the complaint on March 24, 2000, at the earliest. The Plaintiffs' Third Amended Complaint, which first included an equal protection challenge to the 1998 Act, was not filed until December 10, 2000, over one year after the expiration of the statute of limitations. In addition, Defendants assert the Plaintiffs' takings claim was filed before it was ripe. Moreover, Defendants argue that even if Plaintiffs' takings claim was timely filed, that constitutional challenge was included in the *LeBeau* action pursuant to the Court's Orders stating the constitutionality of the 1998 Act would be decided in the *LeBeau* action. *See* Order on Motions, Doc. 148, December 15, 2000;

---

1. Pub.L. No. 92–555, 86 Stat. 1168 (codified at 25 U.S.C. § 1300d, *et seq.* (1983) (amended 1998)).

Memorandum Opinion and Order, Doc. 210, September 28, 2001. Congress clearly intended that timely filed constitutional challenges to the 1998 Act would be resolved in the same action. *See* 25 U.S.C. § 1300d–27(b)(2) (2001).

For the first time, on September 2, 2003, in their response to the Defendants' Motion to Dismiss, Plaintiffs raise a claim that the 1998 Act is unconstitutional because the Tribes' share is disproportionately greater than the lineal descendants' share due to the high number of lineal descendants eligible to share in the Judgment Fund. Plaintiffs further argue that the Eighth Circuit's decision in *Loudner*, 108 F.3d 896, vested their rights in the Judgment Fund, distinguishing their claims from the *LeBeau* plaintiffs' claims.

The Tribes seek to intervene as defendants in this action pursuant to 25 U.S.C. § 1300d–27(a)(1) (2001), because Plaintiffs are seeking to challenge the 1998 Act on constitutional grounds. Incorporating the arguments advanced by the Defendants, the Tribes also move to dismiss Plaintiffs' claim that the 1998 Act is a taking in violation of the Fifth Amendment. The Tribes contend the Court lacks subject matter jurisdiction to consider Plaintiffs' taking claim because it is barred by the statute of limitations in 25 U.S.C. § 1300d–27(d), it is barred by the sovereign immunity of the United States and it is barred because it was not consolidated with the *LeBeau* action. If the takings claim is dismissed, the Tribes request that a final judgment dismissing that claim be entered under Rule 54(b) of the Federal Rules of Civil Procedure.

## DISCUSSION

### A. *Motion to Intervene*

The 1998 Act provides that the Tribes have the right to intervene in any action challenging the constitutionality or validity of distributions under the 1998 Act to the Tribes to "defend the validity of those distributions." 25 U.S.C. § 1300d–27(a)(1). The Court stated in two separate orders that the constitutional challenges to the 1998 Act would be decided in the *LeBeau* case. *See* Order on Motions, Doc. 148, December 15, 2000; Memorandum Opinion and Order, Doc. 210, September 28, 2001. Plaintiffs in this action did not object to the Court's orders and did not seek to intervene in the *LeBeau* action, or to have their constitutional challenges to the 1998 Act consolidated with similar claims in *LeBeau*. Thus, prior to the Plaintiffs' resistance to the Defendants' Motion to Dismiss, the constitutionality or validity of the 1998 Act was not litigated in this action. Given Plaintiffs' assertion of the validity of their constitutional challenge to the 1998 Act, the Court will grant the Tribes' Motion to Intervene in this action pursuant to 25 U.S.C. § 1300d–27(a)(1), for the limited purpose of defending the validity of the distributions to the Tribes under the 1998 Act.

### B. *Motions to Dismiss*

The 1998 Act included a one-year statute of limitations, requiring any action "brought by or on behalf of a lineal descendant or any group or combination of those lineal descendants to challenge the constitutionality or validity of distributions under this part to any covered Indian tribe," to be filed by November 13, 1999. *See* 25 U.S.C. § 1300d–27(d) (referring to any action described in 25 U.S.C. § 1300d–27(a)). Plaintiffs' takings claim will be analyzed separately from their equal protection claim and any other later-asserted constitutional claims because the claims were first alleged at different times.

### 1. *Fifth Amendment Takings Claim*

Plaintiffs first asserted a takings claim in an amended complaint filed on Decem-

ber 19, 1997, when Congress was allegedly considering apportioning all of the interest earned on the Judgment Fund to the Tribes. (Doc. 59.) The same amended complaint was re-filed with the Court on October 13, 1998, one month before the 1998 Act was enacted. The amended complaint alleged that if the legislation to apportion some of the Judgment Fund to the Tribes was passed, it would constitute an unconstitutional taking of the Plaintiffs' property in violation of the Fifth Amendment. Plaintiffs did not seek to amend their takings claim to specifically refer to the 1998 Act, as enacted, until March 24, 2000, after the statute of limitations in 25 U.S.C. § 1300d–27(d) had expired.

Even if the Court would find that pursuant to Federal Rule of Civil Procedure 15(c)(2), the amendment of Plaintiffs' takings claim, as requested in their Motion to Amend Complaint filed March 24, 2000 and allowed by the Court in the Third Amended Complaint filed on December 15, 2000, relates back to the date of the amended complaint filed on October 13, 1998, Plaintiffs cannot prevail on this claim. If the December 15, 2000 Third Amended Complaint related back to the October 13, 1998 amended complaint, Plaintiffs' takings claim would not be barred by the statute of limitations in 25 U.S.C. § 1300d–27(d), but the Court's decision in *LeBeau*, 171 F.Supp.2d at 1024, governs the outcome of Plaintiffs' takings claim. The Court held in *LeBeau*, 171 F.Supp.2d at 1024, that the 1998 Act did not constitute an unconstitutional taking of the lineal descendants' property rights because they did not obtain "*vested* property rights in the Judgment Fund." The reason the lineal descendants did not obtain *vested* property rights was because Congress retained the power to alter the allocation plan until the funds were distributed. *See id.* Because Plaintiffs' takings claim is identical to the *LeBeau* plaintiffs' taking claim and, as discussed below, the other

elements of issue preclusion are satisfied, Plaintiffs takings claim must be dismissed.

▮ The Court finds that under the facts of this case, Plaintiffs are barred by the doctrine of res judicata, and specifically issue preclusion. *See Tyus v. Schoemehl*, 93 F.3d 449, 453 n. 5 (8th Cir.1996) (explaining doctrine of res judicata and difference between issue preclusion and claim preclusion). "Preclusion doctrines are employed to conserve judicial resources and protect parties from 'the expense and vexation' of relitigating claims and issues that have been previously adjudicated.'" *Black Clawson Co., Inc. v. Kroenert Corp.*, 245 F.3d 759, 763–64 (8th Cir.2001). The Eighth Circuit explained the distinction between issue preclusion and claim preclusion:

> Res judicata is often analyzed further to consist of two preclusion concepts: "issue preclusion" and "claim preclusion." Issue preclusion refers to the effect of a judgment in foreclosing relitigation of a matter that has been litigated and decided. Claim preclusion refers to the effect of a judgment in foreclosing litigation of a matter that never has been litigated, because of a determination that it should have been advanced in an earlier suit.

*Tyus*, 93 F.3d at 453 n. 5. Five elements must be met for a final judgment to bar a subsequent suit based on issue preclusion: (1) the party in the second suit sought to be precluded was a party, or in privity with a party, to the original lawsuit; (2) the issue sought to be precluded is the same as that involved in the prior action; (3) the issue was actually litigated in the prior lawsuit; (4) the issue was determined in the prior action by a valid and final judgment; and (5) the determination was essential to the prior judgment. *Id.* at 453. The second through fifth elements do not required extended discussion because they are clearly satisfied. A review of

paragraph 39 of the Fourth Amended Complaint in this action demonstrates that the Plaintiffs incorporated the takings claim from *LeBeau* in this action, satisfying the second element that the issue sought to be precluded is the same as in *LeBeau*. There is no question that the takings claim was actually litigated in the prior lawsuit. *See LeBeau*, 171 F.Supp.2d at 1024. A valid and final judgment has been entered in *LeBeau*, CIV 99–4106, determining the taking issue. A review of the decision in *LeBeau*, 171 F.Supp.2d at 1024 demonstrates that the Court's determination that the 1998 Act was not a taking was essential to the final judgment in that action. The first element of issue preclusion, however, is one that requires further discussion in this case.

■■■ The first element for issue preclusion requires that the parties be the same or be in privity with a party in the first suit. The *LeBeau* action did not involve the same parties. Thus, the issue here is whether the Plaintiffs were in privity with the *LeBeau* plaintiffs. The Eighth Circuit recognized that a nonparty whose interests were adequately represented by a party to the prior action may be found to be in privity with a party to the prior action. *See Tyus*, 93 F.3d at 454–55. Preclusion based on adequate representation is otherwise known as "virtual representation." *See id.* The Eighth Circuit explained that "[w]hether a party adequately represents a non-party such that the party can be considered the virtual representative of the other is a fact-intensive inquiry based on several factors." *Black Clawson*, 245 F.3d at 764. Those factors include:

> [I]dentity of interests between the parties, how closely they are related, whether the party to the present suit participated in or deliberately maneuvered to avoid the effects of the first action, and whether the party to the first action had

incentive to protect the interests of the second party.

*Id.; see Tyus*, 93 F.3d at 455 (setting forth the factors to be considered in determining whether virtual representation applies in a particular case).

The *LeBeau* plaintiffs and the Plaintiffs in this action had the identical interest of securing a judgment from the Court declaring that the 1998 Act was an unconstitutional taking of their property. The parties are related to the extent that they are all lineal descendants who are entitled to share in the Judgment Fund. Moreover, counsel presently representing Plaintiffs in this action initiated the *LeBeau* action and was counsel of record for a significant period of time in the *LeBeau* action. Plaintiffs' counsel continued to be informed of the litigation activity in *LeBeau*, CIV 99–4106 and attended a court trial in that case. Additionally, the Court stated in its Order on Motions, Doc. 148, dated December 15, 2000, that the constitutionality of the 1998 Act would be decided in the *LeBeau* action. Plaintiffs were again informed in the Court's Memorandum Opinion and Order, Doc. 210, dated September 28, 2001, that the constitutionality of the 1998 Act would be decided in the *LeBeau* action. Plaintiffs neither objected to the Court's Orders nor requested that their constitutional challenges to the 1998 Act be formally consolidated with the *LeBeau* action pursuant to 25 U.S.C. § 1300d–27(b)(2), apparently acquiescing in the Court's decision to decide the takings claim in *LeBeau*. There is no evidence, however, of deliberate maneuvering to avoid the effects of the first action. Plaintiffs in the *LeBeau* action had a strong incentive to protect the interests of the Plaintiffs in this case, as they were all lineal descendants who were eligible to share in the Judgment Fund and Congress had reallocated a large portion of the Judgment Fund from the lineal descen-

dants to three tribes. The *LeBeau* plaintiffs' interests were very closely aligned with Plaintiffs' interests.

A final factor mentioned by the *Tyus* panel was whether a public law issue or a private law issue is involved. 93 F.3d at 456. "Although virtual representation may be used in the private law context, its use is particularly appropriate for public law issues." *Id.* One of the reasons cited by the Eighth Circuit in distinguishing between private law and public law issues is that the number of plaintiffs with standing in public law cases is potentially limitless, raising concerns of judicial economy and cost to defendants. *See id.* In the present case, the number of plaintiffs with standing is limited to a certain group of lineal descendants, but that number includes several thousand people. Moreover, this case involves an element of public law as the Judgment Fund at issue in this case was created to compensate certain Native Americans for the taking of land in the 1800's by the United States.

Based upon the analysis above, the Court concludes Plaintiffs were in privity with the *LeBeau* plaintiffs, CIV 99–4106, and their takings claim is barred by issue preclusion. Accordingly, Plaintiffs cannot prevail on their takings claim, even if it is not barred by the applicable statute of limitations.

### 2. *Equal Protection Claim*

■ The first time Plaintiffs alleged that the 1998 Act violated their rights to equal protection of the laws was in the Motion to Amend Complaint, filed on March 24, 2000. The claim is that the 1998 Act's provision in 25 U.S.C. § 1300d–26(c) (2001), applicable to Plaintiffs, requiring them to trace ancestry further back in time than was required of the lineal descendants who were found eligible to share in the Judgment Fund before the Eighth Circuit's *Loudner* decision, violates their

equal protection rights. 108 F.3d at 903. They also allege the tracing requirement is unlawful as a breach of the trust relationship between Plaintiffs and the United States. These claims, as well as any other later-asserted claims that the 1998 Act is unconstitutional or invalid are clearly barred by the statute of limitations provided in 25 U.S.C. § 1300d–27(d), which expired on November 13, 1999. Thus, these claims will be dismissed.

### C. *Rule 54(b) Certification*

The Tribes request that if the Plaintiffs' claims challenging the 1998 Act are dismissed, that the Court enter a final judgment on those claims pursuant to Federal Rule of Civil Procedure 54(b). The Court may direct the entry of a final judgment as to one or more, but fewer than all of the claims in an action, "only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment." Fed.R.Civ.P. 54(b).

■ In considering a request for Rule 54(b) certification, the district court is to first determine that "it is dealing with a 'final judgment.'" *Curtiss–Wright Corp. v. Gen. Elec. Co.,* 446 U.S. 1, 7, 100 S.Ct. 1460, 64 L.Ed.2d 1 (1980). Second, the district court must determine whether there is "no just reason for delay." *Id.* at 8, 100 S.Ct. 1460. The Supreme Court recognized that "[n]ot all final judgments on individual claims should be immediately appealable, even if they are in some sense separable from the remaining unresolved claims." *Id.* The Eighth Circuit Court of Appeals further cautioned that "[a] Rule 54(b) determination should not be made routinely; it is only the 'special case' that warrants an immediate appeal from a partial resolution of the lawsuit." *Interstate Power Co. v. Kansas City Power & Light Co.,* 992 F.2d 804, 807 (8th Cir.1993) (quot-

ing *Hardie v. Cotter & Co.*, 819 F.2d 181, 182 (8th Cir.1987)). The Supreme Court further directed that "in deciding whether there are no just reasons to delay the appeal of individual final judgments ..., a district court must take into account judicial administrative interests as well as the equities involved. Consideration of the former is necessary to assure that application of the Rule effectively 'preserves the historic federal policy against piecemeal appeals.'" *Curtiss–Wright*, 446 U.S. at 8, 100 S.Ct. 1460.

■ The Court has concluded that certain claims by the Plaintiffs challenging the constitutionality and legality of the 1998 Act will be dismissed. The challenge to the 1998 Act is one separable part of the present litigation. This action was filed in 1994 to allow lineal descendants who were not previously notified by the Secretary of the existence of the Judgment Fund to apply for a share of the Judgment Fund. The passage of the 1998 Act occurred nearly four years after this action was filed and involves factual and legal questions separate from the remainder of Plaintiffs' claims in this action. The Court decided the Fifth Amendment takings claim in the related action of *LeBeau*, CIV 99–4106, and a written decision was issued in favor of the United States on that claim. *See LeBeau*, 171 F.Supp.2d at 1024. Following a court trial on the plaintiffs' breach of trust claim in *LeBeau* and the entry of final judgment in that action, the parties appealed, but the appeals were dismissed upon agreement of the parties. Judicial administrative interests do not weigh against an immediate appeal in this case given that this issue is distinct from the remainder of Plaintiffs' claims.

Although the Court is not persuaded that a final judgment should be entered solely to shorten the amount of time the Tribes must wait to obtain payment of the funds they lobbied Congress to reapportion to them from the lineal descendants' share of the Judgment Fund, the Court is persuaded that this is a special case that warrants an immediate appeal from a partial resolution of the lawsuit and there is no just reason for delay. The validity of the 1998 Act must be finally determined before the United States will pay out that portion of the Judgment Fund re-apportioned to the Tribes in the 1998 Act. The Court is uncertain when the remainder of Plaintiffs' claims may be resolved in this action to permit the entry of a final judgment on all of the claims. This litigation has been pending for nearly ten years, and the parties, as well as others similarly situated, are entitled to a final resolution sooner rather than later. Considering judicial administrative interests and the equities involved, the Court determines there are no just reasons to delay the appeal of the dismissal of Plaintiffs' challenges to the 1998 Act and a judgment will be so entered.

### CONCLUSION

The Tribes' will be allowed to intervene in this action to defend the constitutionality or validity of the 1998 Act. The Court will dismiss paragraphs 10(j), 22, 24, 29, 38, 39, 40, 41, 44 of the Fourth Amended Complaint, Doc. 204, to the extent that they challenge the constitutionality or validity of the Mississippi Sioux Tribes Judgment Fund Distribution Act of 1998, Pub. L.No. 105–387, 112 Stat. 3471 (codified at 25 U.S.C. § 1300d–21 *et seq.* (2001)). A final judgment will be entered as to the dismissed claims pursuant to Rule 54(b). Accordingly,

IT IS ORDERED:

1. That the Motion to Intervene, Doc. 256, filed by the Sisseton–Wahpeton Sioux Tribe of the Lake Traverse Indian Reservation, North Dakota and South Dakota; the Spirit Lake

Tribe of the Ft. Totten Indian Reservation; and the Assiniboine & Sioux Tribes of the Ft. Peck Indian Reservation, Montana, is granted and the Tribes are allowed to intervene as Defendants/Intervenors in this action for purposes of litigating their Motion to Dismiss.

2. That the Defendants' Motion to Dismiss, Doc. 253, is granted.

3. That the Tribes' Motion to Dismiss, Doc. 259, is granted.

4. That Plaintiffs' claims, as stated in paragraphs 10(j), 22, 24, 29, 38, 39, 40, 41, 44 of the Fourth Amended Complaint, Doc. 204, to the extent that they challenge the constitutionality or validity of the Mississippi Sioux Tribes Judgment Fund Distribution Act of 1998, Pub.L.No. 105–387, 112 Stat. 3471 (codified at 25 U.S.C. § 1300d–21 *et seq.* (2001)), are dismissed with prejudice.

5. That there is no just reason for delay and a final judgment will be entered pursuant to Federal Rule of Civil Procedure 54(b) as to the claims dismissed in paragraph 4 above.

### JUDGMENT

In accordance with the Memorandum Opinion and Order filed this date with the Clerk,

IT IS ORDERED, ADJUDGED and DECREED that Plaintiffs' claims, as stated in paragraphs 10(j), 22, 24, 29, 38, 39, 40, 41, 44 of the Fourth Amended Complaint, Doc. 204, to the extent that they challenge the constitutionality or validity of the Mississippi Sioux Tribes Judgment Fund Distribution Act of 1998, Pub.L.No. 105–387, 112 Stat. 3471 (codified at 25 U.S.C. § 1300d–21 *et seq.* (2001)), are dismissed with prejudice.