[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 17-14211
_____

D.C. Docket No. 6:14-cv-01551-PGB-GJK

KROMA MAKEUP EU, LLC,
a United Kingdom Limited Liability Company,

Plaintiff-Appellant,

versus

BOLDFACE LICENSING + BRANDING, INC.,
a Nevada Corporation,
KIMBERLY KARDASHIAN,
a California resident,
KOURTNEY KARDASHIAN,
a California resident,
KHLOE KARDASHIAN,
a California resident,
BY LEE TILLETT, INC.,
a Florida Corporation

Defendants-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(April 1, 2019)

Before MARCUS and DUBINA, Circuit Judges, and GOLDBERG,[*] Judge.

GOLDBERG, Judge:

Plaintiff-Appellant Kroma Makeup EU, LLC ("Kroma EU") appeals the district court's grant of summary judgment based on its finding that Kroma EU lacked standing to enforce the KROMA trademark. Because Kroma EU does not have sufficient rights in the mark to sue under the Lanham Act, we affirm the judgment of the district court.

## BACKGROUND

Kroma EU is the former European distributor of cosmetics products using the federally registered mark, KROMA. The owner and registrant of the mark is By Lee Tillett, Inc. ("Tillett") and the rights to use the KROMA mark in the United States rest solely with Tillett. In October 2012, Tillett granted an exclusive license to Kroma EU to import, sell, and distribute KROMA products in Europe, and to use the KROMA mark in furtherance of its business. As part of the licensing agreement, Tillett guaranteed that it owned the KROMA mark and would hold Kroma EU harmless from any judgments against Tillett based on the mark. Tillett retained the right to use the KROMA mark in the United States.

---

[*] Honorable Richard W. Goldberg, United States Court of International Trade Judge, sitting by designation.

Defendant-Appellees—the Kardashian sisters—were celebrity endorsers of a cosmetic line called "Khroma Beauty," sold and manufactured by Defendant Boldface Licensing & Branding, Inc. ("Boldface").  The Kardashians claim that they had no personal knowledge of the KROMA trademark until an entertainment news website, TMZ, published an article about the Kardashians' potential infringement.  However, before the Khroma Beauty line launched, Boldface had purportedly conducted a trademark search that revealed the existence of the KROMA mark.  The Kardashians claim that they did not receive this information.  Boldface sought to register the KHROMA or KARDASHIAN KHROMA mark with the U.S. Patent and Trademark Office, but registration was denied because of likelihood of confusion with the previously registered KROMA mark.

After the Khroma line was released, Boldface sought a declaratory judgment in California federal court that Boldface did not infringe the KROMA trademark.  There, Tillett filed a trademark infringement counterclaim, adding the Kardashians as counterclaim defendants.  The California district court granted Tillett's motion for a preliminary injunction against Boldface, finding that Tillett had demonstrated a likelihood of success on the trademark infringement claim.  *Boldface Licensing + Branding v. By Lee Tillett, Inc.*, 940 F. Supp. 2d 1178 (C.D. Cal. 2013).  Thereafter, Boldface rebranded the product line to "Kardashian Beauty" and the parties settled

3

the dispute.  Kroma was not a party to the California action and did not receive a share of the settlement recovery from Tillett.

Kroma EU subsequently filed this action in the Middle District of Florida against Boldface and the Kardashians, alleging that Boldface directly infringed the KROMA trademark under common law trademark infringement and the Lanham Act by distributing "Khroma" branded cosmetics in Europe, and that the Kardashians were vicariously liable for Boldface's infringement.  Kroma EU also brought claims against Tillett, alleging a cause of action for promissory estoppel.  As to the promissory estoppel claim, the district court held in an earlier order that under Florida law, a foreign licensee could not state a claim for promissory estoppel against its licensor; however, Kroma EU was able to proceed against Tillett under a breach of contract theory.  *Kroma Makeup EU, Ltd. v. Boldface Licensing + Branding, Inc.*, No. 6:14-cv-1551-ORL, 2015 WL 1708757, at *1 (M.D. Fla. Apr. 15, 2015).

The Kardashians moved for summary judgment arguing that Kroma EU did not have the requisite standing to bring the infringement action and that the trademark infringement cause of action was barred by claim preclusion.  Kroma EU also moved for partial summary judgment on the issue of liability.  Earlier in the litigation, Tillett successfully moved to compel arbitration and Kroma EU's claim against Tillett remains stayed pending the arbitration.

The district court granted the Kardashians' motion. The court found that Kroma EU lacked standing to sue for trademark infringement and did not reach the Kardashians' claim preclusion argument. Relying primarily on the licensing agreement between Tillett and Kroma EU, the district court held that the agreement "plainly authorized only Tillett to enforce the trademarks" and to "protect" the mark "from any attempts of illegal use," while "Kroma EU's sole directive was to inform Tillett of instances of infringement." Based on this reading, the district court concluded that these provisions "plainly authorized only Tillett to enforce the trademarks governed by the License Agreement." Therefore, Kroma EU "lack[ed] contractual authority, and hence standing, to pursue § 1125(a) violations against infringers in its own capacity." Based on Kroma EU's purported lack of standing, the court denied Kroma EU's motion for partial summary judgment as moot.

## JURISDICTION

At the time of this appeal, the district court had not yet disposed of all claims against all parties. Kroma EU's claim against Tillett had been stayed pending arbitration, and the district court had failed to enter a default judgment as to Boldface, which was served with process but had never appeared. Instead of dismissing the appeal for lack of jurisdiction, however, we gave Kroma EU the opportunity to request certification of the summary judgment order from the district court under Rule 54(b). Order, *Kroma Makeup EU, LLC v. Boldface Licensing &*

5

*Branding, Inc., et al.*, No. 17-14211 (11th Cir. Feb. 5, 2019). A Rule 54(b) judgment has now been entered as to the claims against the Kardashians and final judgment was entered in favor of the Kardashians. Rule 54(b) Judgment, *Kroma Makeup EU, LLC v. Boldface Licensing & Branding, Inc., et al.*, 6:14–cv–1551, ECF No. 172 (M.D. Fla. Feb. 21, 2019). The Court, then, maintains jurisdiction over this appeal.

## STANDARD OF REVIEW

The district court's grant of summary judgment is reviewed *de novo* and we apply the same legal standards that governed the district court. *Johnson v. Bd. of Regents of Univ. of Ga.*, 263 F.3d 1234, 1242 (11th Cir. 2001). Summary judgment is proper when the evidence shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When reviewing a grant of summary judgment, we view the evidence in the light most favorable to the non-moving party and resolve all reasonable doubts about the facts in favor of the non-movant. *Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1247 (11th Cir. 2013) (quoting *Skop v. City of Atlanta*, 485 F.3d 1130, 1143 (11th Cir. 2007)). The district court's judgment can be affirmed on any ground supported by the record, regardless of the basis for the initial decision. *Parks v. City of Warner Robins*, 43 F.3d 609, 613 (11th Cir. 1995).

## ANALYSIS

The issue before us is the extent of a licensee's rights in a trademark infringement action under Section 43(a) of the Lanham Act. While the Lanham Act typically evokes questions of standing, as a licensee, Kroma EU's rights thereunder rely upon the licensing agreement it entered with Tillett. We adopt the position taken by the district courts in this circuit—that a licensee's right to sue to protect the mark "largely depends on the rights granted to the licensee in the licensing agreement." *Drew Estate Holding Co. v. Fantasia Distrib., Inc.*, 875 F. Supp. 2d 1360, 1366 (S.D. Fla. 2012) (quoting *Hako-Med USA, Inc. v. Axiom Worldwide, Inc.*, No. 8:06-cv-1790-T-27EAJ, 2006 WL 3755328, at *6 (M.D. Fla. Nov. 15, 2006)). *See also Aceto Corp. v. TherapeuticsMD, Inc.*, 953 F. Supp. 2d 1269, 1279 (S.D. Fla. 2013) ("[S]tanding to sue depends largely on the rights granted to the licensee under the licensing agreement.").

Kroma EU disputes the district court's ruling that it lacks the requisite standing to bring an infringement claim under the Lanham Act. The Lanham Act provides a cause of action against "[a]ny person who, on or in connection with any goods or services, . . . uses in commerce any word, term, name, symbol, or device, or any combination thereof, . . . [which] is likely to cause confusion . . . as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial

activities by another person." 15 U.S.C. § 1125(a)(1). The statute affords a cause of action to "any person who believes that he or she is likely to be damaged." *Id*. But, despite this broad language, 1125(a) does not get "such an expansive reading" so as to allow "all factually injured plaintiffs to recover." *Lexmark Int'l, Inc v. Static Control Components, Inc.*, 572 U.S. 118, 129 (2014) (quoting *Holmes v. Sec. Inv'r Prot. Corp.*, 503 U.S. 258, 266 (1992)). This is especially true where, as here, a licensing agreement between two parties governs each party's entitlement to infringement claims.

The court below focused its attention on whether the license agreement between Tillett and Kroma EU conferred adequate standing on Kroma EU to bring a claim under Section 1125(a). But, the question before us is not that of traditional standing. Indeed, it is "not [of] standing at all." *City of Miami v. Bank of Am. Corp.*, 800 F.3d 1262, 1276 (11th Cir. 2015), *vacated on other grounds*, 137 S. Ct. 1296 (2017). Rather, it is whether the statute "grants the plaintiff the cause of action that he asserts." *Bank of Am. Corp. v. City of Miami*, 137 S. Ct. 1296, 1302 (2017). *See also Lexmark*, 572 U.S. at 128 n.4. ("We have on occasion referred to this inquiry as 'statutory standing' and treated it as effectively jurisdictional. That label is an improvement over the language of 'prudential standing,' since it correctly places the focus on the statute. But it, too, is misleading, since the absence of a valid . . . cause of action does not implicate subject-matter jurisdiction, *i.e.*, the court's statutory or

constitutional *power* to adjudicate the case." (internal quotation marks and citations omitted)).  In other words, does the licensing agreement between Tillett and Kroma EU give Kroma EU, the licensee, sufficient "rights in the name" to sue under the Lanham Act?  *Camp Creek Hosp. Inns, Inc. v. Sheraton Franchise Corp.*, 139 F.3d 1396, 1412 (11th Cir. 1998).

The answer is no.

To start, "a statutory cause of action extends only to plaintiffs whose interests 'fall within the zone of interest protected by the law invoked.'"  *Lexmark*, 572 U.S. at 129 (quoting *Allen v. Wright*, 468 U.S. 737, 751 (1984)).  The licensing agreement affords rights and imposes obligations on the parties relating to the enforcement of any trademark claims.  As such, there is little dispute between the parties that we turn to that agreement to determine if Kroma's interests fall within the zone of interest protected by the Lanham Act.  In so doing, we fall back on basic principles of contract interpretation and "construe the agreement as a whole," *Westport Ins. Corp. v. Tuskegee Newspapers, Inc.*, 402 F.3d 1161, 1164 (11th Cir. 2005), careful to afford the plain language meaning of "each and every word [the agreement] contains," *Equity Lifestyle Props., Inc. v. Fla. Mowing & Landscape Serv., Inc.*, 556 F.3d 1232, 1242 (11th Cir. 2009).

Here, applying the licensing agreement to this inquiry is a straightforward exercise.  The plain language of the agreement demonstrates the parties' intent for

Tillett to retain all ownership and enforcement rights. Kroma EU—while it may have other rights under the agreement—does not possess the ability to assert its rights in the mark in this proceeding.

There are two integral provisions of the licensing agreement between Tillett and Kroma EU as they relate to trademark infringement. First, and in no uncertain terms, ownership of the mark is reserved to Tillett. Tillett retains the KROMA trademark as its "exclusive and inalienable property" and "reserves the right to assign/transfer it to any individual person or legal entity." Tethered to the ownership provision, the agreement requires that Tillet "protect [the trademark] properly from any attempts of illegal use, to the best of his knowledge." Should any infringement occur, Tillett would be required to "guarantee[] [Kroma EU] against any claims . . . concerning [the mark's] intellectual property rights." And even if there were any doubt about the agreement's terms as they relate to Tillett's enforcement obligation, the owner of Tillett, Aglaia Lee Rodriguez, explained in a declaration to the district court that these provisions were created with the intent to retain Tillett's enforcement power over the KROMA mark:

> [M]y Company's intention was to allow [Kroma EU] to advertise and sell our Kroma products in Europe, but at the same time to retain for my Company all rights to the KROMA trademark, including the exclusive right to protect and enforce the KROMA trademark in any infringement actions. I wanted my Company and its lawyers to exclusively control the enforcement of the KROMA trademark,

because infringement actions and the publicity surrounding them can have lasting effects on the trademark.

The issue boils down to Kroma EU's rights pursuant to the agreement—and specifically, if an explicit obligation on Tillett to protect against the mark's infringement *precludes* Kroma EU's enforcement powers against the same infringement. Certainly, Kroma EU maintained the exclusive right to *use* the mark "for advertising purposes and for the purpose of Goods sale and promotion" in Europe. But importantly, Section 4.3.2 only vested Kroma EU with the obligation to "inform [Tillett] of any illegal use of the trademark," prompting Tillett to file suit against the infringer—at which point Tillett would be *required* to compensate Kroma for its losses resulting from the infringement. These provisions read together indicate that Tillett alone has the exclusive right to sue for infringement. Otherwise, as the Kardashians point out, there would have been little need for the agreement to require Tillett to compensate Kroma EU for any loss from the infringement. And in concert with the "time-honored maxim of construction, *expressio unius est exclusio alterius*, the inclusion of specific things implies the exclusion of those not mentioned," *Cast Steel Prods., Inc. v. Admiral Ins. Co.*, 348 F.3d 1298, 1303 (11th Cir. 2003), these provisions "manifest the [parties'] ability to clearly and precisely delegate and limit authority" over infringement claims, *In re Celotex Corp.*, 487 F.3d 1320, 1334 (11th Cir. 2007). The licensing agreement—and at its core, Kroma EU's

11

exclusion from any trademark protection rights coupled with Tillett's explicit enforcement power—does just that.

And contrary to Kroma EU's suggestion that the Kardashians' interpretation of the agreement implies that Kroma EU ceded to Tillett "any" or "every last shred" of Kroma's "ability to seek legal recourse"—our reading of the licensing agreement makes no such inference.  The agreement—as understood by both parties—obliges Tillett to indemnify Kroma EU for monetary losses caused by any infringement.  Surely, Tillett's failure to do so would potentially raise a cogent breach of contract cause of action.  As testament to that available recourse, that is exactly what Kroma EU did when it brought a breach of contract claim for Tillett's alleged failure to compensate Kroma in the California litigation.  Kroma EU, then, is not left without a "shred" of its ability to seek legal recourse based on its rights in the mark.

Our sister courts of appeals have agreed with the general sentiment that a license agreement between two parties can limit a licensee's ability to bring a Lanham Act claim.  For example, in *Finance Investments Co. (Bermuda) v. Geberit AG*, 165 F.3d 526 (7th Cir. 1998), the licensee there was permitted to sue on its own behalf only if the licensor declined to sue after it was notified of the infringement.  Otherwise, per the agreement, the licensee's sole recourse was to notify the licensor of any infringing acts.  *Id*. at 532.  Thus, "[b]ecause the license [was] the sole source

12

giving the plaintiffs *any* interest in the [] mark," when the licensee failed to follow these procedures, it was "strip[ped] . . . of the right to raise a § 43(a) claim." *Id.*

The same can be said for Kroma EU. The licensing agreement plainly authorized Tillett to file suit against infringers. Kroma EU was limited in its available recourse: it was assigned limited rights to the KROMA mark and the agreement clearly delineated its only available recourse regarding trademark infringement. Therefore, the licensing agreement does not give Kroma EU sufficient "rights in the name" to sue under the Lanham Act.

Accordingly, we affirm the judgment of the district court.

**AFFIRMED.**