[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 20-12571
Non-Argument Calendar

_____

D.C. Docket No. 1:18-cv-04381-ELR

ZELDA WARE,

Plaintiff-Appellant,

versus

CITY OF ATLANTA,
CHRISTOPHER FALL, individually and in his official capacity,

Defendant-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(June 24, 2021)

Before JORDAN, BRANCH, and GRANT, Circuit Judges.

PER CURIAM:

Zelda Ware appeals the district court's grant of summary judgment in favor of the City of Atlanta and Atlanta Police Officer Christopher Fall, in his individual capacity, on her 42 U.S.C. § 1983 complaint alleging violations of her Fourth Amendment rights and a related state law claim.[1]  She argues that the district erred in granting summary judgment on her claims that Officer Fall (1) unlawfully entered and searched her home without a warrant and without her consent, and (2) unlawfully arrested her without probable cause and used excessive force.  She also argues that there was a genuine issue of fact as to whether Officer Fall acted with actual malice for purposes of her state law claim for vicarious liability against the City of Atlanta.  After careful review, we affirm.

## I.    Background

Ware filed a *pro se* civil complaint in the state court of Fulton County against the City of Atlanta and Officer Fall, in his individual and official capacity, raising various claims related to Officer Fall's actions at her home in August 2016.  Specifically, she alleged that Officer Fall went to her home at the request of an employee with the Georgia Department of Family and Children Services ("DFACS") in order to locate a child.  Ware asserted that Officer Fall "barged" into her home and began searching her home without her permission.  And when

---

[1] Ware was represented by counsel in the district court proceeding, but she is proceeding *pro se* on appeal.

2

Ware told Officer Fall that the child was not there and was with Ware's daughter, Officer Fall threatened to arrest her unless she "g[ot] her daughter on the telephone." Ware alleged that she complied with his request, but he nevertheless "aggressively grabbed [her], twisted her arm and shoulder and placed her in handcuffs," which caused an injury to her shoulder. Officer Fall then removed the handcuffs and left. Ware asserted that Officer Fall's actions violated her Fourth Amendment and Fourteenth Amendment rights in violation of 42 U.S.C. § 1983 because (1) Officer Fall did not have a warrant and did not have any authority to enter and search her home; and (2) he lacked probable cause to arrest her, and he used excessive force to execute the illegal arrest.[2] Ware also alleged that the City of Atlanta was liable for Officer Fall's actions under Georgia law because he acted with actual malice, and that she was entitled to punitive damages based on his malicious, reckless, and intentional conduct. The City of Atlanta and Officer Fall removed the case to the United States District Court for the Northern District of Georgia.

Following discovery, the City of Atlanta and Officer Fall moved for summary judgment. According to Officer Fall, he was dispatched to Ware's home in response to a 911 call by an employee of DFACS. DFACS had a court order for

---

[2] The claims against Officer Fall in his official capacity were dismissed at the motion-to-dismiss stage. None of the dismissed claims are the subject of this appeal, and, therefore, we will not discuss them further.

the removal of Ware's minor grandson, D.J., from Ware's home, and the DFACS employee requested police assistance with executing the court order. Additionally, Officer Fall stated that he "had information that the situation [might] involve attempted kidnapping." Officer Fall stated that "[a]t some point during the interaction with Ware, [he] did inform [her] that the [DFACS] order existed." Officer Fall searched the premises in an attempt to locate the child but could not find him. D.J. was with Ware's daughter headed to South Carolina, and initially Ware refused to call her daughter to request that she return home with D.J. Officer Fall asserted that both he and the DFACS worker "kept asking" Ware to call her daughter, and eventually "Ware purported to make a call to [her daughter] but claimed that her phone died and the call could not be completed." Officer Fall told Ware that if she did not comply and contact her daughter, Ware "would be arrested for interference with the lawful custody of a child." Ware continued to not comply, and Officer Fall began to place Ware under arrest. Officer Fall told Ware to "give him her hands" and that he initiated the handcuffing process by taking "her arm and pull[ing] it behind her back," which was "the same technique" he used with arrestees that are standing and not resisting. He stated that because she was older and a female, he "actually used less force" than he normally would, and when she "said something about her shoulder," he ceased, let go of her arm, and did not complete the handcuffing process. At that point, Ware complied and

4

contacted her daughter, and Officer Fall removed the handcuff on Ware's one arm. Ware did not request any medical attention during the encounter.

Ware opposed the motion, asserting that because her version of the facts differed significantly from that of Officer Fall, summary judgment was inappropriate. Specifically, Ware agreed that Officer Fall was dispatched to Ware's home following a 911 call by a DFACS employee requesting officer assistance. Ware asserted that the employee reported to 911 dispatch that she needed "an officer, preferably a sheriff, [to] assist [her] with removing a child from the home, we have a court order, and also allegations of kidnapping." (second alteration in original).

However, according to Ware, upon arrival at her home, Officer Fall began "aggressively" knocking on her door, and when she opened the door, he forced his way into the home without her permission and began searching her home and asking "where's the child" without identifying himself, or mentioning a court order or a warrant. When Officer Fall mentioned D.J. by name, Ware understood that he was looking for her grandson, and she informed him that D.J. was with her adult daughter and that they were headed to South Carolina. Ware attempted to show Officer Fall a Georgia Safety Plan related to D.J. that was issued by DFACS that permitted Ware to have custody of D.J., but Officer Fall would not listen. Ware called her daughter several times to ask her to return with D.J., and, when she

finally got her on the phone, Ware's phone died.  Ware asserted that Officer Fall became upset about the phone situation and her inability to reach her daughter, so he "grabbed [her] arm . . . twisted [it] behind [her] back," and placed a handcuff on one of her arms.  Ware told Officer Fall that he was hurting her arm, and Ware's niece, who was in the home, grabbed Officer Fall's arm and told her she would not let go until he let Ware go.  Officer Fall then let Ware go, but he told her to "get [her] daughter on [the] phone" or else she was going to jail.  Ware then reached her daughter on the phone and her daughter returned home with D.J. a few hours later and DFACS took custody.

In light of these facts, Ware maintained that (1) Officer Fall's warrantless entry into and search of her home without her consent violated her Fourth Amendment rights; (2) Officer Fall's arrest without probable cause or arguable probable cause and his use of excessive force violated her Fourth Amendment rights; (3) she was entitled to punitive damages; and (4) an issue of fact existed as to whether Officer Fall acted with actual malice for purposes of whether the City of Atlanta could be held vicariously liable for his actions.

Upon review, the district court determined that, even under Ware's version of events, Officer Fall and the City of Atlanta were entitled to summary judgment on all claims.  With regard to Ware's challenge to Officer's Fall's entry and search of her home, the district court determined that Officer Fall did not violate the

Fourth Amendment because under Georgia law the DFACS order qualified as a warrant, and Officer Fall was acting pursuant to that warrant. As to Ware's challenge to her arrest, the district court determined that Officer Fall was engaged in a discretionary duty, and Ware failed to meet her burden of demonstrating that Officer Fall violated a clearly established constitutional right at the time of the alleged violation because she failed to provide supporting legal citations or substantive analysis. Consequently, the district court determined that Officer Fall was entitled to qualified immunity. And because the unlawful arrest allegation was the premise for her excessive force allegation, Officer Fall was entitled to qualified immunity on that allegation as well. Finally, the district court determined that Ware's claim for vicarious liability against the City of Atlanta lacked a legal basis, and, regardless, she failed to establish that Officer Fall acted with actual malice. This appeal followed.

## II.    Discussion

"We review a district court's grant of summary judgment *de novo*," viewing the evidence and drawing all reasonable inferences in the light most favorable to the non-moving party. *Crawford v. Carroll*, 529 F.3d 961, 964 (11th Cir. 2008). Summary judgment is appropriate when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Crawford*, 529 F.3d at 964

("Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."). "The moving party bears the initial burden of proving the absence of a genuine issue of material fact. The burden then shifts to the nonmoving party, who is required to go beyond the pleadings to establish that there is a genuine issue for trial." *Whitehead v. BBVA Compass Bank*, 979 F.3d 1327, 1328 (11th Cir. 2020) (quotations and citation omitted).

"In order to prevail on a civil rights action under § 1983, a plaintiff must show that he . . . was deprived of a federal right by a person acting under color of state law." *Griffin v. City of Opa-Locka*, 261 F.3d 1295, 1303 (11th Cir. 2001). Ware argues that Officer Fall's actions deprived her of her Fourth Amendment rights in violation of § 1983. The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . ." U.S. Const. amend. IV. We address each of her § 1983 allegations and her related state law claim in turn. We may affirm "on any ground supported by the record, regardless of the basis for the initial decision." *Kroma Makeup EC, LLC v. Boldface Licensing + Branding, Inc.*, 920 F.3d 704, 707 (11th Cir. 2019).

A.    Officer Fall's Entry and Search of Ware's Home

Ware argues that the custody transfer order merely authorized local law enforcement to assist the legal custodian with retrieving D.J. from Ware's home, and Officer Fall exceeded the scope of that court order when he entered her home without the DFACS employee and without Ware's authorization to search for D.J.[3]

The Fourth Amendment prohibits an officer from entering a person's home without a warrant, absent exigent circumstances or the individual's consent. *See Payton v. New York*, 445 U.S. 573, 590 (1980). Under Georgia law "an order issued by a court authorizing law enforcement officers to take physical custody of a child" qualifies as a "warrant." O.C.G.A. § 19-9-41(17). A custody transfer/removal warrant effectively authorizes the seizure of a child by law enforcement, which is analogous to an arrest warrant for an adult. *See Torres v. Madrid*, 141 S. Ct. 989, 996 (2021) (explaining that "the arrest of a person is quintessentially a seizure" (quotation omitted)). It is well-established under both federal and Georgia law that where an officer possesses an arrest warrant, the officer "is entitled to enter [the suspect's home] and to search anywhere in the [home] in which the [suspect] might be found." *State v. Wright*, 419 S.E.2d 334, 337 (Ga. App. 1992) (quoting *Maryland v. Buie*, 494 U.S. 325, 332–33 (1990));

---

[3] For the first time on appeal, Ware argues that Officer Fall violated the requirements for executing a warrant because he failed to comply with the knock and announce rule. However, we have "repeatedly held that an issue not raised in the district court and raised for the first time in an appeal will not be considered by this [C]ourt." *Access Now, Inc. v. S.W. Airlines Co.*, 385 F.3d 1324, 1331 (11th Cir. 2004) (quotation omitted). Accordingly, we do not address this issue.

*see also Lee v. State*, 820 S.E.2d 147, 154 (Ga. App. 2018) (same). There is no dispute that the minor D.J., who was the subject of the custody transfer order, resided at Ware's home. Thus, Officer Fall's entry and search of Ware's home for D.J. pursuant to the custody transfer order, which constituted a warrant under Georgia law, was valid under the Fourth Amendment.[4] *See Wright*, 419 S.E.2d at 337. Accordingly, Officer Fall the district court did not err in granting summary judgment on this issue.

B.    The Arrest

Ware argues that her arrest was unlawful and violated the Fourth Amendment because Officer Fall lacked probable cause, or arguable probable cause, to arrest her.[5] Relatedly, Ware argues that Officer Fall used excessive force

---

[4] Because we conclude that Officer Fall's entry and search of the home was constitutional based on the warrant for removal of the minor child from the home, we do not address Ware's arguments that there is a genuine issue of material fact as to whether the alleged kidnapping information was a basis for Officer Fall's entry into the home.

[5] Ware also argues that the arrest was "tainted" because Officer Fall had no right to be in her home in the first place. We do not reach this argument because, as discussed previously, the custody transfer/removal order constituted a warrant and authorized Officer Fall to go to Ware's home to seize the minor in question and to search the home for places where he might reasonably be found.

when he "needlessly twisted" her arm behind her back in the process of attempting to handcuff her.

"Qualified immunity protects government officials performing discretionary functions from suits in their individual capacities unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known." *Gates v. Khokhar*, 884 F.3d 1290, 1296 (11th Cir. 2018). When asserting the affirmative defense of qualified immunity, a defendant must first establish that he was acting within his discretionary authority when he performed the allegedly unconstitutional acts at issue. *Id.* at 1297. Ware does not dispute that Officer Fall was acting in his discretionary authority. Thus, the burden shifted to her to show that Officer Fall (1) "violat[ed] a constitutional right," and (2) "the constitutional right at issue was clearly established at the time of the alleged misconduct." *Id.* Ware cannot establish the first prong and so our inquiry ends.

"An officer's application of physical force to the body of a person for the purpose of arresting [her] [is] itself an arrest . . . even if the person [does] not yield." *Torres*, 141 S. Ct. at 995 (quotation omitted). "[A] warrantless arrest lacking probable cause violates the [Fourth Amendment]." *Gates*, 884 F.3d at 1297. However, the existence of actual probable cause, or arguable probable cause, "at the time of arrest is an absolute bar to a subsequent constitutional

11

challenge to the arrest." *Id.* at 1297–98 (quotation omitted). "Probable cause exists where the facts within the collective knowledge of law enforcement officials . . . are sufficient to cause a person of reasonable caution to believe that a criminal offense has been or is being committed." *Id.* at 1298 (quotation omitted). Actual probable cause "requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." *Id.* (quotation omitted). Arguable probable cause exists when a reasonable officer "in the same circumstances and possessing the same knowledge as the defendant could have believed that probable cause existed to arrest." *Id.* (alteration adopted) (quotation omitted). "Whether an officer has probable or arguable probable cause . . . depends on the elements of the alleged crime and the operative fact pattern." *Id.* (quotation omitted).

Ware argues that Officer Fall lacked probable cause to arrest her. We disagree. In Georgia, "[a] person commits the offense of interference with custody when without lawful authority to do so, the person: (A) [k]nowingly or recklessly takes or entices any child . . . away from the individual who has lawful custody of such child . . . ; [or] (B) [k]nowingly harbors any child . . . who has absconded." *See* O.C.G.A. § 16-5-45(b)(1). Given the totality of the circumstances in this case viewed in the light most favorable to Ware, Officer Fall at a minimum had arguable probable cause to believe that Ware committed the offense of interference

with custody.[6]  Specifically, DFACS had a custody transfer order to remove D.J. from the home, D.J. was not present in the home when Officer Fall arrived, and Ware informed Officer Fall that D.J. was with her daughter on the way to South Carolina.  Ware admits that she made several attempts to reach her daughter on the phone but was unable to do so, and, then when she did reach her, her phone died.  A reasonable officer facing the same circumstances and possessing the same information could have believed that Ware committed the offense of interference with custody and was stalling and assisting in keeping the child away from DFACS.  Thus, Officer Fall had at a minimum arguable probable cause to arrest Ware.

Relatedly, Ware argues that Officer Fall violated her Fourth Amendment rights when he used excessive force and caused her physical injury by twisting her arm behind her back when he illegally arrested her.  The district court concluded that her excessive force allegation necessarily failed because Officer Fall was entitled to qualified immunity on the underlying illegal arrest claim.  "Under this Circuit's law, . . . a claim that any force in an illegal stop or arrest is excessive is subsumed in the illegal stop or arrest claim and is not a discrete excessive force claim."  *Jackson v. Sauls*, 206 F.3d 1156, 1171 (11th Cir. 2000).  On the other

---

[6] Although the district court did not reach the probable cause question, as noted previously, we may affirm on any ground supported by the record, regardless of the ground relied on by the district court.  *Kroma Makeup*, 920 F.3d at 707.

13

hand, "a claim for excessive force during a legal stop or arrest is a discrete claim." *Id.*

Ware's counseled complaint did not specify whether her excessive force allegation was premised on her unlawful arrest claim or whether she was also arguing that, even if the arrest was lawful, Officer Fall used excessive force. However, in the response in opposition to the motion for summary judgment, Ware cited to "unlawful arrest" principles and stated that because her "arrest was illegal . . . any injury suffered as a result thereof is compensable." Thus, it is clear that her excessive force allegation was based on the illegality of her arrest, and it therefore was "subsumed" in the false arrest claim itself and was not a separate, "discrete excessive force claim." *Jackson*, 206 F.3d at 1171. Accordingly, the district court properly determined that, because Officer Fall was entitled to qualified immunity on the unlawful arrest claim, Ware's excessive force allegation necessarily failed.

C.    State Law Claim

Ware states in her brief, without advancing any argument or citing to any legal authority, that she has "set[] forth above a genuine issue of fact as to [whether] Officer [Fall] acted with malice, a question to be posed to a jury." This statement appears to relate to her underlying claim that the City of Atlanta was vicariously liable for Officer Fall's actions because he acted with actual malice.

"We have long held that an appellant abandons a claim when he either makes only passing references to it or raises it in a perfunctory manner without supporting arguments or authority." *Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 683 (11th Cir. 2014). Although we liberally construe *pro se* briefs like Ware's, a court may not "serve as *de facto* counsel for a party" or "rewrite" a brief in order to preserve a claim. *GJR Invs., Inc. v. Cty. of Escambia, Fla.*, 132 F.3d 1359, 1369 (11th Cir. 1998), *overruled on other grounds as recognized in Randall v. Scott*, 610 F.3d 701, 709 (11th Cir. 2010). Accordingly, we conclude that Ware abandoned any challenge to the district court's grant of summary judgment on her state law claim.[7] *Id.*; *see also Sapuppo*, 739 F.3d at 683.

### III.    Conclusion

Consequently, we affirm the district court's order granting summary judgment in favor of the defendants in this civil § 1983 action.

**AFFIRMED.**

---

[7] Even if Ware had not abandoned her state law claim, under Georgia law, a municipality "shall not be liable for the torts of policemen or other officers engaged in the discharge of the duties imposed on them by law." O.C.G.A. § 36-33-3. Although in the district court proceedings Ware cited to *McClendon v. Harper*, 826 S.E.2d 412 (Ga. Ct. App. 2019), for the proposition that the City of Atlanta could be liable for Officer Fall's actions if he acted with actual malice, her reliance on that case is misplaced. *McClendon* was unique to liability for MARTA officers and did not involve O.C.G.A. § 36-33-3 or municipalities. *Id.* at 419–20, 420 n.7. Accordingly, the district court did not err in entering summary judgment in favor of the City of Atlanta on this issue.