[PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 22-10985

_____

D.H. PACE COMPANY, INC.,
d.b.a. Overhead Door Company of
Atlanta,
d.b.a. Overhead Door Company of
Kansas City,

Plaintiff-Counter
Defendant-Appellant,

versus

OGD EQUIPMENT COMPANY, LLC,

Defendant-Counter
Claimant-Appellee.

———————————————

Appeal from the United States District Court
for the Northern District of Georgia
D.C. Docket No. 1:20-cv-00410-TCB

———————————————

Before BRANCH and BRASHER, Circuit Judges, and WINSOR,*
District Judge.

BRANCH, Circuit Judge:

At issue in this case is whether Plaintiff D.H. Pace Company, Inc. ("Pace"), a trademark licensee, can bring a claim against a third party for unfair competition under the Lanham Act when its licensing agreement does not expressly authorize it to do so. Under the facts of this case, we conclude that it can.

This appeal involves three entities, although only two are parties to this lawsuit. Pace (a company that sells and services garage doors) sued a competitor, Overhead Garage Door ("OGD") (a company that also offers garage door services), alleging a host of federal and state law violations relating to OGD's trade practices. Pace and Overhead Door Corporation (a garage door manufacturer that is not a party to this case but that has a name noticeably similar to Defendant OGD, its competition) have a

———————————————

* The Honorable Allen C. Winsor, United States District Judge for the Northern District of Florida, sitting by designation.

licensing agreement in which Pace is the licensee and Overhead Door Corporation is the licensor.  As part of this agreement, Pace uses Overhead Door Corporation's marks.

Before Pace brought this suit, Overhead Door Corporation and OGD had been in litigation involving OGD's alleged trademark infringement and unfair trade practices (much like Pace's instant allegations), which culminated in a settlement agreement between Overhead Door Corporation and OGD.

In the instant lawsuit, the district court granted summary judgment to OGD on all of Pace's claims, concluding in large part that Pace could not bring suit because Pace was a nonexclusive licensee that lacked sufficient ownership rights in Overhead Door Corporation's marks, and because OGD and Overhead Door Corporation's settlement agreement extinguished Pace's claims. Pace timely appealed.

After careful review of the record and with the benefit of oral argument, we conclude that Pace may bring its federal and state law claims.  Accordingly, we vacate the district court's order to the extent it is inconsistent with this opinion and remand for further proceedings.

## I.    Background

### a.  Factual Background

#### i.  *The Parties*

Pace is a garage door company based in Olathe, Kansas. For nearly a century, Pace and its predecessors have been in the business of selling, installing, and servicing garage doors in the greater Atlanta and Kansas City areas and using the trade names "Overhead Door Company of Atlanta" and "Overhead Door Company of Kansas City." Pace has spent millions of dollars advertising and promoting these trade names through its websites, on social media, through search engines, and at trade shows.

Overhead Door Corporation, Pace's licensor, manufactures garage doors and garage door openers. Overhead Door Corporation owns a federally registered trademark (a red ribbon with the words "Overhead Door") and uses that mark, as well as several others, in connection with the promotion and sale of its products.

Pace's competitor, OGD, is a Texas-based company that offers residential and commercial property owners "overhead door service[s] across the nation," including "installations, repairs, and maintenance for overhead doors and dock equipment." OGD started operating as "Overhead Garage Door" in 2011 and first entered the Atlanta and Kansas City markets in 2019.

### ii. *The Licensing Agreement*

In certain markets, including Atlanta and Kansas City, Pace operates under distribution and licensing agreements[1] (the "licensing agreement") with Overhead Door Corporation. Under their agreement—in which Overhead Door Corporation is the licensor and Pace is a nonexclusive licensee[2]—Overhead Door Corporation granted Pace the right to sell its products and, with its permission, to use certain trade names in connection with the promotion and sale of its products, including "Overhead Door" and "Overhead" (collectively, the "marks"). Although the licensing agreement spells out the terms and conditions for using Overhead Door Corporation's marks and trade names, it does not address trademark enforcement or either party's ability to sue.

### iii. *OGD and Overhead Door Corporation's Previous Litigation*

In 2017, Overhead Door Corporation's in-house counsel sent OGD a letter that accused OGD of false advertising. The letter asserted that OGD's use of the term "Overhead Door—Official Website" in a paid internet advertisement was causing confusion

---

[1] Pace's right to use Overhead Door Corporation's marks derives from two nonexclusive license agreements. The agreements are identical in all material respects. Accordingly, like the district court and the parties, we refer to these contracts collectively as the "licensing agreement."

[2] On top of selling and servicing Overhead Door Corporation products, Pace also sells products from other garage door manufacturers.

among consumers who were mistakenly believing that the advertisement was for Overhead Door Corporation's website. Then, a few months later, Overhead Door Corporation sent OGD a demand letter "on matters involving trademark infringement and unfair competition." Ultimately, the friction between the two companies came to a head when OGD won the race to the courthouse, suing Overhead Door Corporation and one of its distributors in federal court in Texas.[3] OGD alleged that Overhead Door Corporation was engaging in unfair competition under state and federal law and sought a declaration that Overhead Door Corporation's trademark and trade name were invalid or unenforceable. OGD also asked the court to declare that "overhead," "overhead door," and "overhead doors" were generic terms and thus not subject to trademark protection.

Overhead Door Corporation counterclaimed, alleging that the term "Overhead Door" was closely associated with Overhead Door Corporation and its licensees and that OGD was knowingly and wrongfully passing itself off as an Overhead Door Corporation affiliate. As a result, Overhead Door Corporation argued, OGD was confusing and deceiving Overhead Door Corporation's current and prospective customers into the mistaken belief that OGD was affiliated with or endorsed by Overhead Door Corporation.

---

[3] In the Texas lawsuit, OGD sued one of Overhead Door Corporation's Texas distributors—not Pace.

In November 2019, after two years of litigation, OGD and Overhead Door Corporation entered into a settlement agreement that resolved all their claims and contained mutual releases. Under the agreement, OGD could use a redacted version of the settlement agreement as a defense in any legal action brought by an Overhead Door Corporation distributor or licensee. Importantly, however, the agreement also stated that it was not binding on any "current and future licensees . . . of [Overhead Door Corporation]."

b. Procedural History

On January 28, 2020, Pace filed this lawsuit, suing OGD for unfair competition in violation of § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); deceptive trade practices in violation of the Georgia Uniform Deceptive Trade Practices Act ("GUDTPA"), O.C.G.A. § 10-1-370 *et seq.*; unfair competition in violation of O.C.G.A. § 23-2-55, as well as Georgia and Kansas common law; and trademark infringement in violation of Georgia common law.[4] Pace alleged that OGD, in directly competing with Pace, intentionally misled and confused consumers into believing that OGD was the same company as, or otherwise affiliated with, Pace and Overhead Door Company of Atlanta and Overhead Door Company of Kansas City. Pace also alleged that it owned common law rights in the trade names "Overhead Door Company of

---

[4] Pace amended its complaint twice over the course of litigation, reasserting the same causes of action in each amended complaint.

Atlanta" and "Overhead Door Company of Kansas City" and that OGD's use of "Overhead Door LLC" was designed to mislead and confuse customers in violation of federal and state law. Pace sought a permanent injunction, corrective advertising, and lost profits, among other damages.

In response, OGD asserted numerous affirmative defenses against Pace's claims and filed a counterclaim against Pace, seeking a declaratory judgment that the terms "overhead," "overhead door," and "overhead doors" are generic and thus not protected under trademark law.

Extensive discovery followed, and OGD eventually moved for summary judgment on its counterclaim and all of Pace's claims. Pace then moved for partial summary judgment on 15 of OGD's affirmative defenses, arguing that they either lacked supporting evidence, failed as a matter of law, or did not constitute a defense.

After hearing oral argument on the parties' motions, the district court granted OGD's motion for summary judgment on all of Pace's claims and denied Pace's motion for partial summary judgment. As to OGD's counterclaim, although the district court found that there was a genuine and material dispute about the genericness of the terms "overhead" and "overhead door(s)," it dismissed the counterclaim as moot. As relevant to this appeal, the district court divided its reasoning into roughly four parts.

First, the district court concluded that Pace met the statutory requirements to bring a Lanham Act cause of action after

22-10985                Opinion of the Court                9

observing that Pace produced "scores" of examples of "confusion—largely caused by OGD and its technician and corporate practices—and [finding that] Pace's goodwill and company reputation [fell] squarely within the Lanham Act's zone of protection."[5]

Second, notwithstanding its finding that Pace fell within the Lanham Act's purview, the district court, relying on our precedent in *Kroma Makeup EU, LLC v. Boldface Licensing + Branding, Inc.*, 920 F.3d 704 (11th Cir. 2019), concluded that the licensing agreement between Pace and Overhead Door Corporation stood as a "contractual bar" to Pace bringing suit. Specifically, the district court reasoned that because the licensing agreement did not

_____

[5] The district court describes Pace's ability to bring a claim under the Lanham Act as meeting the "requirements for standing under the statute." This verbiage suggests that the district court may be referring to "prudential standing," a doctrine that the Supreme Court has deemed a "misnomer" because it is "not derived from Article III." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 126 (2014) (quotation omitted). Instead, the more accurate and precise inquiry is whether Pace "has a cause of action under the statute." *Id.* at 128 (explaining that courts "do not ask whether in our judgment Congress *should* have authorized [a plaintiff's] suit, but whether Congress in fact did so," reasoning that a court "cannot limit a cause of action that Congress has created merely because 'prudence' dictates"); *see also Highland Consulting Grp., Inc. v. Minjares*, 74 F.4th 1352, 1359 (11th Cir. 2023) (explaining that the "prudential standing" label is misleading because the absence of a valid cause of action does not implicate subject matter-jurisdiction and that under *Lexmark*, "the question is whether the plaintiff has a cause of action under the statute" (quotation omitted)). Accordingly, we characterize the district court's conclusion in these terms—namely, whether Pace has a cause of action under the statute.

affirmatively grant Pace a right to sue, Pace lacked such a right under *Kroma*. The district court also concluded that Pace, "as a non-exclusive licensee, [did] not possess sufficient rights in the marks to bring its claims."

Third, the district court concluded that Pace's state law and common law claims for trademark infringement, unfair competition, and deceptive trade practices failed to withstand summary judgment for similar reasons: because the licensing agreement did not grant Pace a right to sue on the marks and "[b]ecause Pace's rights in the marks derive from its licensing agreement with [Overhead Door Corporation], Pace may not independently maintain its claims."

Fourth, the district court concluded that OGD and Overhead Door Corporation's settlement agreement provided a "further" independent bar to Pace's claims. The district court reasoned that because "Pace's rights in the marks are derived entirely from its licensing agreement with [Overhead Door Corporation], [Overhead Door Corporation's] voluntary discharge of those rights in the [s]ettlement [a]greement acts to discharge Pace's rights as well."

Pace now appeals the district court's summary judgment order.

## II.    Standard of Review

We review the district court's grant of summary judgment *de novo*. *Kroma*, 920 F.3d at 707. Summary judgment is proper

when the evidence shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.* (quoting Fed. R. Civ. P. 56(a)). When reviewing a grant of summary judgment, we view the evidence in the light most favorable to the non-moving party and resolve all reasonable doubts about the facts in favor of the non-movant. *Id.*

## III.    Discussion

On appeal, Pace argues that the district court correctly determined that it has a cause of action under the Lanham Act but erred by concluding that the licensing agreement, Pace's status as a nonexclusive licensee, and the settlement agreement all independently bar Pace from bringing its claims. Pace also argues that, for the same reasons, the district court erred by granting summary judgment on its state law and common law claims. We agree with Pace.

Pace brought an unfair competition claim under the Lanham Act, which "mak[es] actionable the deceptive and misleading use of marks in . . . commerce" and provides several enforcement mechanisms to that end. *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 131 (2014) (quoting 15 U.S.C. § 1127); *see also* 15 U.S.C. § 1127 (explaining that the Lanham Act "mak[es] actionable the deceptive and misleading use of marks in such commerce," "protect[s] persons engaged in such commerce against unfair competition," and "prevent[s] fraud and deception in such commerce by the use of reproductions, copies, counterfeits, or colorable imitations of registered marks").

Under § 32(1) of the Lanham Act, a trademark registrant may bring a civil action to protect its mark.[6]  15 U.S.C. § 1114(1). But Congress did not limit "the [statutory] remedies given" in the Lanham Act to owners alone.  *Id.* § 1114(2).  Section 43(a) separately empowers "any person who believes that he or she is or is likely to be damaged" to sue "[a]ny person" using "any word,

---

[6] Section 32(1) provides, in relevant part:

   (1)  Any person who shall, without the consent of the registrant—

      (a)  use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive; or

      (b)  reproduce, counterfeit, copy, or colorably imitate a registered mark and apply such reproduction, counterfeit, copy, or colorable imitation to labels, signs, prints, packages, wrappers, receptacles or advertisements intended to be used in commerce upon or in connection with the sale, offering for sale, distribution, or advertising of goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive,

   shall be liable in a civil action by the registrant for the remedies hereinafter provided.

15 U.S.C. § 1114(1).

22-10985                Opinion of the Court                13

term, name, symbol, or device" or "any . . . false or misleading description [or misleading representation] of fact" in ways "likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person."[7]  15 U.S.C. § 1125(a)(1).  Pace brought its claim under § 43(a).

---

[7] Section 43(a)(1) provides:

(1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—

   (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or

   (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,

shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1).

The Supreme Court has explained that the reach of § 43(a) is broad. *Lexmark*, 572 U.S. at 129 (noting that, when "[r]ead literally, [§ 43(a)'s] broad language might suggest that an action is available to anyone who can satisfy the minimum requirements of Article III" but that it is unlikely that Congress "meant to allow all factually injured plaintiffs to recover" (quotation omitted)). Indeed, only a zone-of-interests test and a proximate-cause requirement supply the limits on who may sue.[8] *Id.* at 129–33.

Considering the "scores" of examples of customer confusion and that "Pace's goodwill and company reputation [fell] squarely within the Lanham Act's zone of protection," the district court concluded that Pace met the requirements for bringing a claim under the statute. And, notably, the district court's conclusion is not challenged on appeal.

Pace does, however, challenge the district court's holding that, despite falling "squarely within the Lanham Act's zone of protection," Pace's claims were nonetheless barred by (1) the licensing agreement; (2) Pace's status as a nonexclusive licensee; and (3) OGD and Overhead Door Corporation's settlement agreement. After careful review, we conclude that none of these

---

[8] The zone-of-interests limitation refers to the presumption "that a statutory cause of action extends only to plaintiffs whose interests fall within the zone of interests protected by the law invoked." *Lexmark*, 572 U.S. at 129 (quotation omitted). And the proximate-cause limitation refers to the presumption "that a statutory cause of action is limited to plaintiffs whose injuries are proximately caused by violations of the statute." *Id.* at 132.

considerations impedes Pace's ability to bring its claims and address each in turn.

### a. The licensing agreement does not bar Pace from suing

The district court concluded that Pace was barred from bringing its Lanham Act claim because under our precedent in *Kroma*, the licensing agreement between Pace and Overhead Door Corporation acted as a contractual bar to Pace's suit. Pace argues that the district court erred, and we agree.

In *Kroma*, we affirmed the district court's grant of summary judgment based on its finding that the licensing agreement did not give the licensee "sufficient rights in the mark to sue under the Lanham Act." 920 F.3d at 706. Kroma Makeup EU, LLC ("Kroma EU"), the plaintiff and a cosmetics distributor, had licensed the federally registered mark "KROMA" from By Lee Tillett, Inc. ("Tillett"), the owner and registrant of the mark. *Id.* Tillett (the licensor) granted Kroma EU (the licensee) an exclusive license to import, sell, and distribute KROMA products in Europe and to use the KROMA mark to further the plaintiff's business. *Id.* Their licensing agreement "afford[ed] rights and impose[d] obligations on the parties relating to the enforcement of any trademark claims." *Id.* at 709. Importantly, the agreement (1) reserved to Tillett "all ownership and enforcement rights" and (2) required Tillett to protect the trademark from any illegal use and, if any infringement did occur, to "guarantee" Kroma EU against any claims concerning intellectual property rights. *Id.* The *Kroma*

Court explained that these "two integral provisions," "read together[,] indicate[d] that Tillett [(the licensor)] alone ha[d] the exclusive right to sue for infringement." *Id.* at 709–10; *see id.* at 709 (using "basic principles of contract interpretation" to conclude that the "plain language of the agreement" demonstrated "the parties' intent for Tillett to retain all ownership and enforcement rights" (quotations omitted)).     Accordingly, due to the licensing agreement's reservation of enforcement power in the licensor, we concluded that Kroma EU, the licensee, did "not have sufficient rights in the mark to sue under the Lanham Act." *Id.* at 706, 709–10.

Here, the district court erroneously interpreted *Kroma* as imposing a "contractual bar" to Pace's ability to sue. The district court acknowledged that the language in the licensing agreement at issue in *Kroma* is not present in the licensing agreement between Pace and Overhead Door Corporation.     But it nonetheless explained that "*Kroma* requires the [c]ourt to analyze what rights were *given* to the licensee, not what rights were withheld." Using that metric, the district court concluded that, absent a right to sue provision, Pace lacked sufficient rights under the licensing agreement to bring its claims against OGD.

The district court misreads *Kroma*. Rather than requiring a licensing agreement to contain a right to sue provision before a licensee can bring a Lanham Act claim, *Kroma* simply acknowledges that a licensing agreement between two parties can limit a licensee's otherwise broad ability to bring a claim under the

Lanham Act and explains that we must use "basic principles of contract interpretation" to determine what rights and obligations a licensing agreement may otherwise impose on parties. 920 F.3d at 709–10 (explaining "the general sentiment that a license agreement between two parties can limit a licensee's ability to bring a Lanham Act claim"). Here, rather than interpret Pace and Overhead Door Corporation's licensing agreement, the district court read *Kroma* as requiring a right to sue provision. Not finding one, it concluded that the lack of such a provision in the licensing agreement here was fatal to Pace's claim. But *Kroma* never instituted such a positive requirement. And here, in contrast to the licensing agreement in *Kroma*, both Pace and OGD agree that the licensing agreement between Pace and Overhead Door Corporation is silent on the topic of trademark enforcement and on Pace's ability to sue. Thus, contrary to the district court's conclusion, there is no "contractual bar [to sue] dictated by *Kroma*" because—unlike the licensing agreement in *Kroma*—nothing in the licensing agreement bars Pace from bringing a Lanham Act claim.[9]

---

[9] The district court highlights *Kroma*'s statement that "that a licensee's right to sue to protect the mark largely depends on the rights granted to the licensee in the licensing agreement" when concluding that Pace does not have sufficient rights in the marks to bring its claim. 920 F.3d at 708 (quotation omitted). But this language in *Kroma* does not change our analysis. *Kroma* merely acknowledged that a licensee's rights may be limited by a licensing agreement and instructs courts to use basic contract interpretation to determine the contours of each party's rights. *Id.* at 709. Further confirming our reading, *Kroma* also notes that our sister circuits similarly look to licensing

OGD argues that we should not conclude that Pace can bring a Lanham Act claim because, in so holding, we necessarily must rewrite the licensing agreement to give Pace the right to sue. But this argument fails to consider the Lanham Act's backdrop and misconstrues *Kroma*.  As *Lexmark* makes clear, § 43(a) of the Lanham Act grants broad authority to sue.  572 U.S. at 129.  And, as explained above, Pace falls within that broad grant of authority. Although *Kroma* explains that a licensing agreement can restrict that broad right to sue, the licensing agreement at issue here does not do so.  Thus, rather than reading a right to sue into the licensing agreement, as OGD contends, we merely decline to read in a restriction on Pace's right to sue when the licensing agreement is silent and does not impose one.  Simply put, without the licensing agreement posing a contractual bar to Pace's ability to sue, Pace is free to bring a Lanham Act claim, subject to the statute's restrictions as explained by *Lexmark*.[10]

---

agreements only for express limitations on a licensee's otherwise broad rights: "Our sister courts of appeals have agreed with the general sentiment that a license agreement between two parties can limit a licensee's ability to bring a Lanham Act claim."  *Id.* at 710.

[10] Relatedly, OGD protests that a "licensee like Pace possesses rights *only* as a result of its license," meaning that if a licensing agreement does not include the right to sue, "then a licensee-plaintiff has no right within the 'zone of interests' that § 43(a) of the Lanham Act protects."  But *Kroma*, § 43(a) of the Lanham Act, and the precedent interpreting the Lanham Act do not support that proposition.  To the contrary, § 43(a) provides broad authority to sue, and

b. Pace's status as a nonexclusive licensee does not bar Pace from suing

The district court, relying on several non-binding cases, also concluded that "Pace, as a non-exclusive licensee, simply [did] not possess sufficient rights in the marks to bring its claims." We are not persuaded.

As an initial matter, none of the out-of-circuit and district court cases that the district court cited (and that OGD relies on) are binding on us. *See Quabaug Rubber Co. v. Fabiano Shoe Co.*, 567 F.2d 154 (1st Cir. 1977); *Shell Co. v. Los Frailes Serv. Station, Inc.*, 596 F. Supp. 2d 193 (D.P.R. 2008), *aff'd sub nom. The Shell Co. (Puerto Rico) v. Los Frailes Serv. Station, Inc.*, 605 F.3d 10 (1st Cir. 2010); *Aceto Corp. v. TherapeuticsMD, Inc.*, 953 F. Supp. 2d 1269, 1280 (S.D. Fla. 2013).

Further, these cases are readily distinguishable. Most critically, all three cases rely on § 32(1) of the Lanham Act—which permits a trademark *registrant* to bring a civil action—when analyzing whether a nonexclusive licensee can bring a claim under the Lanham Act. *See, e.g.*, *Quabaug*, 567 F.2d at 159–60 (observing that courts have permitted exclusive licensees, in addition to trademark registrants, to bring a claim under § 32(1) of the Lanham Act but noting that "[t]here appear to be no cases where a nonexclusive licensee has been permitted to maintain a trademark

the district court's conclusion that Pace meets the statutory requirements to bring such a claim is unchallenged on appeal.

infringement suit in the absence of the 'registrant'"); *Shell*, 596 F. Supp. 2d at 201–02 (explaining that § 32(1) restricts relief to trademark registrants, which may include exclusive licensees, but "certainly does not include nonexclusive licensees"); *Aceto Corp.*, 953 F. Supp. 2d at 1280 (explaining that although trademark licensees typically do not have the ability to sue under § 32(1), exclusive licensees may sue under § 32(1)). These analyses are irrelevant here. Pace, which is not the trademark registrant, brought a claim under § 43(a) of the Lanham Act—not § 32(1). Indeed, when discussing a nonexclusive licensee's ability to bring a claim under § 43(a), the very same cases conclude that nonexclusive licensees are free to bring suit under § 43(a). *See e.g.*, *Quabaug*, 567 F.2d at 160 (concluding that the nonexclusive licensee could maintain a claim under the Lanham Act, even without the licensor's presence in the suit, because § 43(a) "permits 'any person who believes that he is or is likely to be damaged' to bring a 'civil action'" (quoting 15 U.S.C. § 1125(a))); *id.* (explaining that § 43(a) of the Lanham Act "is to be broadly construed" and that "one who may suffer adverse consequences from a violation of [§ 43(a)] has [the ability] to sue regardless of whether he is the registrant of a trademark"); *Shell*, 596 F. Supp. 2d at 204 (holding that the nonexclusive licensee "ha[d] a reasonable interest to be protected and ha[d] properly asserted a basis [to sue] pursuant to

section 43(a)"). Accordingly, we decline to affirm the district court based on these inapposite cases.[11]

### c. OGD and Overhead Door Corporation's settlement agreement does not bar Pace from suing

The district court also concluded that OGD and Overhead Door Corporation's settlement agreement provided an independent bar to Pace's ability to sue. Again, we disagree.

The settlement agreement between OGD and Overhead Door Corporation—which OGD and Overhead Door Corporation entered into before Pace filed this lawsuit—resolved all their claims and contained mutual releases that prevent OGD and Overhead

---

[11] Like Pace's Lanham Act claim, the district court also granted summary judgment on Pace's common law and state law claims because "those claims are based on Pace's derivative rights in the marks" and "[b]ecause Pace's rights in the marks derive from its licensing agreement with [Overhead Door Corporation], Pace may not independently maintain its claims." But this conclusion is erroneous for the reasons we already explained. Pace's status as a nonexclusive licensee does not bar Pace from suing and neither does the licensing agreement.

On appeal, OGD argues that Pace waived its argument "that the district court erred by holding its state-law claims fell with its federal claim" because Pace never made this argument below. Moreover, to the extent that the district court erred in ruling on Pace's state law claims, OGD argues that Pace invited such error "by failing to make any argument to the contrary," meaning that the district court's conclusion is unreviewable on appeal. After reviewing the record, we conclude that Pace has actively litigated its state law claims at each stage of the proceedings and has not invited error. Thus, we do not find merit in either of these arguments.

Door Corporation "from raising new claims relating to the actions of [the other] occurring after the" settlement agreement's effective date. We turn first to the provision in the settlement agreement addressing its scope:

> This Agreement shall be binding upon, and shall inure to the benefit of, (1) OGD and its current and future Affiliates; (2) [Overhead Door Corporation's] business unit doing business under the trademark/service mark and/or trade name 'Overhead Door' and current and future Affiliates of such business unit; and (3) [Overhead Door] Lubbock and its current and future Affiliates. *The Parties expressly acknowledge that this Agreement shall not be binding on* (1) current and future divisions of [Overhead Door Corporation's] business that do not do business under the trademark/serve mark and/or trade name 'Overhead Door,' or (2) *current and future licensees, distributors, and resellers of* [*Overhead Door Corporation*] *except OD Lubbock.*

(Emphasis added.)

Thus, although the agreement may prevent OGD and Overhead Door Corporation from suing each other, the settlement agreement is "not . . . binding on . . . current and future licensees." As such, the settlement agreement is not binding on licensees like Pace and does not prevent Pace from suing. *See, e.g.*, *Great Am. Ins. Co. v. Primo*, 512 S.W.3d 890, 893 (Tex. 2017) (explaining that

"[t]he goal of contract interpretation is to ascertain the parties' true intent as expressed by the plain language they used" in the contract); *see also Whittlesey v. Miller*, 572 S.W.2d 665, 669 (Tex. 1978) (holding that a release generally cannot bind a party who did not sign it).[12]  This conclusion is confirmed by another section of the settlement agreement, entitled "Potential Distributor Lawsuits," which contemplates future lawsuits against OGD by Overhead Door Corporation's distributors and licensees:

> [Overhead Door Corporation] shall not direct any of its distributors or licensees to take legal action against OGD if the acts of OGD that are the basis for such legal action would not amount to breach of this Agreement. *For clarity, this limitation shall not apply to any claims of any* [*Overhead Door Corporation*] *distributor or licensee that are based on conduct of OGD that is not the subject of this Agreement.*[13]

(Emphasis added.)

Notwithstanding the settlement agreement's language, the district court reasoned, and OGD argues on appeal, that "[Overhead Door Corporation's] voluntary discharge of [the]

---

[12] The settlement agreement provides that "[t]he construction, interpretation and enforcement of [the agreement] shall be governed by the laws of the state of Texas."

[13] We do not address whether Pace's claims are based on conduct that is the subject of the settlement agreement because that question is not before us.

rights in the [s]ettlement [a]greement acts to discharge Pace's rights as well." For support, OGD emphasizes Pace's admission that, according to the terms of its settlement agreement with OGD, Overhead Door Corporation would be barred from asserting the claims that Pace is asserting in this case. But although the terms of the settlement agreement may bar Overhead Door Corporation from bringing the claims in this case, the settlement agreement is clear that its terms do not bar licensees like Pace. Indeed, the agreement expressly contemplates future lawsuits against OGD by Overhead Door Corporation licensees. And although OGD again relies on *Kroma* and emphasizes that "a licensee's rights are derivative of the licensor's," OGD provides no authority to support its argument that a *licensee's* § 43(a) claim under the Lanham Act is barred if the *registrant's* claim is otherwise barred by a separate contract between the registrant and a third-party.[14] Thus, applying the plain language of the settlement agreement to this case and finding no other authority that would bar Pace from bringing its claims, we conclude that the settlement agreement does not prohibit Pace from bringing suit.

---

[14] OGD cites *Biosyntec, Inc. v. Baxter Healthcare Corp.*, 746 F. Supp. 5 (D. Or. 1990), as support for its argument that because Overhead Door Corporation cannot pursue the claims that Pace asserts, neither can Pace. But *Biosyntec* is not binding on us and does not require a different result in any event because *Biosyntec* involved a patent infringement claim—not a Lanham Act claim. *See* 746 F. Supp. at 10 (explaining that claimants under the patent statute must be "owners").

## IV.    Conclusion

In sum, we conclude that the licensing agreement, Pace's status as a nonexclusive licensee, and the settlement agreement do not bar Pace from bringing its claims under the Lanham Act, state law, or common law.  Accordingly, we **VACATE** the district court's order to the extent that it is inconsistent with this opinion and **REMAND** for further proceedings.